CITY OF GRAND RAPIDS *v.* KRAKOWSKI.

1. PRINCIPAL AND SURETY—BONDS—SURETY FOR HIRE—LIABILITY—
   FIDELITY INSURANCE.
   A corporate surety for hire, unlike a gratuitous surety, may
   not invoke the rule of *strictissimi juris*, but its rights and
   duties are to be measured as in actions on contracts of
   insurance.

2. SAME—STATUTORY BOND—FORM—VALIDITY. .
   A bond, conditioned upon the faithful performance of the
   duties of his office, and to account for all moneys, etc.,
   coming into his hands as such, given by the clerk of the
   superior court of Grand Rapids, naming said city as
   obligee instead of the people of the State of Michigan,
   as required by the statute, is nevertheless valid as a
   common-law obligation.

3. SAME—DUTIES OF CLERKS OF COURTS—SCOPE OF FIDELITY BONDS.
   It is not an unfair assumption that their bonds, conditioned
   for the faithful performance of the duties of their office,
   embrace every duty and obligation imposed upon clerks
   of courts of record by statute, direct lawful order, usage
   or rules of practice in the courts they serve.

4. TENDER—PRACTICE—MONEY PAID INTO COURT.
   By long-settled practice in this State, money may be paid
   into court as a tender at any time before plea, as a matter
   of course, no statute or rule requiring any consent or
   special order by the court to authorize such payment
   before pleading, but if a defendant wishes to pay money
   into court after pleading he must obtain a judge's order
   for that purpose.

5. SAME—COMPLIANCE WITH RULE — TECHNICAL IRREGULARITY —
   EFFECT.
   Requirement to enter a common rule as to the payment of
   a tender to the clerk of the court before pleading, which
   was not complied with, *held*, to be merely a technical irreg-
   ularity, and that the purpose was served by the statement
   or voucher accompanying the check, which was accepted
   and cashed, stating the title and nature of the suit to
   which the payment applied, the amount and purpose of

the payment, with the amount to be applied on certain assessments, to recover which the action was brought.

6. PRINCIPAL AND SURETY—BONDS—MONEY PAID AS TENDER—LIA-
BILITY OF SURETY CO.

A surety company was liable upon its bond, conditioned for the faithful performance of the duties of his office by the clerk of a court of record and to account for "all moneys received by him as such officer, or paid into said office while he is acting as such officer," for money paid to him as a tender in an action then pending in said court, which he received and appropriated to his own use.

Error to superior court of Grand Rapids; Dunham, J. Submitted June 11, 1919. (Docket No. 73.) Decided October 6, 1919.

Assumpsit by the city of Grand Rapids against Alexander E. Krakowski, principal, and the Southern Surety Company, surety, on a bond. Judgment for plaintiff. Defendant surety company brings error. Affirmed.

*Jewell & Smith,* for appellant.

*Ganson Taggart (James H. Campbell,* of counsel), for appellee.

STEERE, J. Defendant Alexander E. Krakowski was clerk of the superior court of Grand Rapids from January 1, 1912, until December 27, 1917, when he was removed from office because of discovered defalcations. The superior court of Grand Rapids was organized under Act No. 49, Pub. Acts 1875, which provided for a clerk required to give a bond, approved by the judge of said court, to the people of the State of Michigan in the penal sum of $10,000 conditioned for faithful performance of the duties of his office and to account for all moneys, records, etc., coming into his hands as such clerk. Krakowski was first appointed to fill a vacancy, the term for which ended May 1,

1912. When appointed he gave a bond running to the city of Grand Rapids in the sum of $10,000 with the defendant surety company as his bondsman. This bond ran through the unexpired term for which he was appointed and was approved by the judge of said court. On May 1, 1912, a new bond of like form with the same surety was given running to May 1, 1914, the clerk's term of office being for two years. This was approved by the common council instead of by the judge of the court, and was renewed by continuation certificates at the expiration of each term to the end of his incumbency. The forms for renewal were furnished by the surety company to be used by its agent who solicited the business, as he explained, "for the convenience of the company and its agents, the same premium being charged as for a new bond," which was regularly paid by the city.

This action was brought by plaintiff on said bond to recover from Krakowski and his surety the claimed amount of his defalcations, which the testimony showed occurred from time to time in each term. He interposed no defense and judgment by default was entered against him for the amount claimed. The defendant surety company pleaded the general issue with various notices and was furnished with a bill of particulars amounting to $4,914.21.

As the case developed upon the trial and is presented here, defendant contests but one item of the claimed defalcations, being a deposit of $2,798.77, made with Krakowski as clerk of the court, by the Grand Rapids & Indiana Railway Company on January 16, 1914, as a claimed tender paid into the superior court in an action by the city of Grand Rapids against said railroad company for certain special taxes, the validity and amount of which was the subject of litigation in that court and case. Before this action was begun the Grand Rapids & Indiana Railway Company as-

signed to the city all its right, title and interest in the money which it had deposited as a tender with Krakowski as clerk. No order or rule of the court was filed or entered in relation to such deposit. The payment was made by a voucher bank order stating what it was for, payable to "the order of clerk of the superior court of Grand Rapids." Krakowski indorsed it as such clerk and was paid the amount which he appropriated to his own use, making total default as to the same. At the time of the deposit he entered it in the cash book, and in the ledger regularly kept in connection with his office as follows:

"City of Grand Rapids vs. G. R. & I. Railroad Company, 1914, January 16, tender $2,798.77 page 38 cash book."

He also gave to the railroad company's attorney the following receipt:

"No. 316.    Superior Court of Grand Rapids, Mich.,
                                "January 16, 1914.
"Received of James H. Campbell, attorney, the sum of two thousand seven hundred and ninety-eight and 77/100 dollars for tender in the case of the city of Grand Rapids vs. G. R. & I. Railway Company.
"$2,798.77    (Signed) Alexander E. Krakowski,
                        "Clerk and register of said court."

The bond sued upon is concededly not in form or to the obligee prescribed by statute, but its validity as a bond, or common-law obligation, is not questioned. The condition of said bond is as follows:

"Now, therefore, the condition of the foregoing obligation is such, that if the said Alexander E. Krakowski, shall and does faithfully perform the duties of his said office, and does on demand deliver over to his successor in office, or other proper officer or agent of said municipal corporation, all books, papers, moneys, effects and property belonging to said corporation, or appertaining to his office, which may be in his custody and received by him as such officer, or paid into said

office, and will on demand pay over and account to said municipal corporation, or to any proper officer or agent thereof, all moneys received by him as such officer, or paid into said office while he is acting as such officer, then these presents and all herein contained shall be null and void; otherwise in full force and virtue."

The material facts are practically undisputed, and the case was tried by the lower court without a jury. Plaintiff had judgment for the full amount claimed.

Counsel for the defendant surety company state their contentions as to the item of claimed tender by the railroad as follows:

"(*a*) This money is not recoverable under the first condition of the bond, because it did not belong to the city, for the reason that money paid to the clerk of a court of record without an order of the court remains the property of the person paying it, until accepted by the opposite party, or until control thereof is taken by the court.

"(*b*) This money would not be recoverable by the railway company (therefore not recoverable by the city by virtue of its assignment) under this bond running to the city only, there being no privity of contract and no right to sue thereon given by the statute.

"(*c*) There is no liability under either condition of the bond, whatever the ownership, because there was no official duty on the part of the clerk to receive this deposit of money and, consequently, his doing so was not an official act which could create liability against the surety on the bond in question."

The contention between the city and railway company which occasioned the deposit in question with Krakowski as a tender into court arose over a special street improvement tax for $3,016 levied against the railroad on certain lands, a portion of which the latter claimed not to own. It tendered to the city the amount which it conceded was a proper tax on its land. This was refused by the city and an action followed to recover the full tax claimed. After notice

of appearance and before pleading, counsel for the railway company paid the admitted amount to the clerk of the court in which the suit was brought for the purpose of keeping the tender good, and notified the city attorney of the fact.

It is conceded by defendant's counsel that had there been an order of the court recognizing this tender no question could be raised as to the clerk having received the money in performance of an official duty, binding him officially and his bondsman. In whatever form presented defendant's denial of liability is bottomed on its primary contention—

"that this record does not show a case where the party had a right to make the payment into court, and that some order of the court, at least, was necessary. The least that could be required under these circumstances was the filing or entry of such an order as, under the old practice, was ordinarily entered in the common rule book."

While the distinction is not of controlling significance here, as the case more directly turns on the law of tender in this State and whether the terms of the bond cover this money paid into the clerk's office for the purpose of a tender, yet as bearing upon defendant's relations with plaintiff it is to be borne in mind that defendant is engaged in the surety business for profit, its compensation being in proportion to the kind and amount of security sold. Its agent solicited from plaintiff the business of writing this bond and the city paid the premiums. Defendant may not, therefore, as could a gratuitous bondsman, invoke strictly technical relief under the rule of *strictissimi juris*. For pay and as a purely business transaction it accepted and adopted the provisions of this bond, contracting to perform according to the terms of the fidelity insurance it wrote. Its rights and duties are to be measured as in actions on contracts of insurance.

*Ladies of Maccabees* v. *Surety Co.*, 196 Mich. 27. In that connection it is not to be overlooked that the conditions of this obligation imposed upon defendant's principal not only faithful performance of the duties of his office, to account for and pay over all moneys received and held by him as such officer, but also "all moneys * * * paid into said office while he is acting as said officer." Whether or not legally and technically within the scope of his official position to receive, hold and account for this money as such officer, it certainly was paid into said office while he was acting as such officer, and paid to him in his office accompanied by a voucher fully advising what it was for and why paid to him at that time and place.

The substance of defendant's contention is that this payment of a claimed tender was but a private transaction between the railway company and Krakowski as an individual; that the money deposited with him was never in his hands by virtue of his office, because not received in performance of any duty of his office prescribed by statute or order of the court of which he was clerk. Various aspects of this proposition are ably argued for defendant in technical detail with many citations of authorities, largely from other jurisdictions. The question is primarily to be tested by Michigan practice and decisions as applied to the conditions of this bond. It was executed for and by Krakowski as a public officer, in assumed compliance with statutory requirement. It is conditioned for faithful performance of the duties of his office in terms harmonizing with the spirit and intent of legislative requirement for protection of both public and private interests which might be detrimentally affected by the negligence, peculation or other misconduct of such officer. None of its provisions is prohibited by statute or against public policy. It is valid as a common-law obligation even though the obligee

be other than designated by statute. *Bay County* v. *Brock,* 44 Mich. 45; *Board of Education* v. *Grant,* 107 Mich. 151; *People* v. *Newberry,* 152 Mich. 292; *Kuhl* v. *Chamberlain,* 21 L. R. A. (N. S.) 770, note (140 Iowa, 546, 118 N. W. 776); 32 Cyc. p. 58.

Concededly there is no direct statutory provision expressly directing in detail the manner of paying money into a court of record to keep good a tender, or as a tender, to the opposite party in a suit pending in such court; neither was any order made in this case by the judge of the court in relation to the money deposited, and it is contended for defendant that in the absence of an order by the court or some express statutory provision no official duty rested upon the clerk to receive the money and no liability fell upon his surety for any defalcation as to it. Decisions are cited from other jurisdictions in support of this proposition, and there are decisions tending to the contrary.

It would be a narrow, if not novel, interpretation of statutes providing for clerks in courts of record to hold that they had no duties or responsibilities in that capacity except as each of the many daily duties of their office great and small, which long usage and the nature of their position demands, was specifically designated by detailed provision of statute, or even by some direct order of the court. In performance of the many routine, non-judicial functions of the court they in a sense are a part of and represent it, for they are required to perform duties which without them would be incumbent on the judge of the court. To them is confided the care and custody of the court's office, files and records, with the responsibility for their correct and safe keeping, and various other necessary ministerial duties which by combination of written and unwritten law enacted or developed by custom and long usage appertain to courts of record. It is not an unfair assumption that their bonds con-

ditioned for the faithful performance of the duties of their office embrace every duty and obligation imposed upon the clerk of a court of record by statute, direct lawful order, usage or rules of practice in the courts they serve. Though not in all particulars controlling here, the case of *Howard* v. *United States,* 102 Fed. 77, 42 C. C. A. 169, affirmed 184 U. S. 676, in a general way expresses and elaborates such view, and holds that a bond of the clerk of the United States circuit court conditioned "faithfully to discharge the duties of his office" embraces every duty and obligation imposed on the clerk "by law or the lawful order, usage and practice of the court."

The payment into court in this case was primarily to keep good a tender made before action and not wholly under the statute, which provides for a tender after suit is brought. The distinction seems, however, of little importance here as the payment was in fact made to Krakowski after suit was brought and by long-settled practice in this State money may be paid into court at any time before plea as a matter of course, although it is said of a tender before suit that when the same is regular and supplemented by payment into court the money is relinquished to the plaintiff, and the trial court was right in refusing plaintiff a judgment for the sum tendered. *Wetherbee* v. *Kusterer,* 41 Mich. 359.

No statute or rule in this State requires any consent or special order by the court to authorize such payment before pleading. If a defendant wishes to pay money into court after pleading he must obtain a judge's order for that purpose. In Green's Practice (of 1866) (2d Ed.), p. 313, the adopted manner of making payment is thus stated in part; italicized as shown:

"Money may be paid into court at any time before plea pleaded, as *a matter of course;* or *after* plea, on

obtaining a *judge's order* for that purpose. (1) If before plea, a rule should be entered for that purpose in the book of common rules. (2) The money must be then paid to the clerk, who will give a receipt for it. * * * If the defendant wish to pay money into court after pleading, he must get a judge's order for that purpose and serve it on the plaintiff's attorney, and pay the money as above indicated. * * Under the former mode of pleading, when a tender before suit brought was pleaded, the money must be paid into court, and notice of the payment given with the plea; (6) otherwise the plaintiff might treat the plea as a nullity and proceed to judgment. (7) * * * According to our present practice, the money tendered should be paid into court, and notice thereof given under the plea of the general issue."

In 1 Abbott's Practice (of 1901), § 1035, the practice is stated as follows:

"In cases where the claim of the plaintiff is for a sum certain, or capable of being ascertained by mere computation, the defendant may, in order to prevent the expense of further proceedings, pay into court such a sum of money as he acknowledges the plaintiff ought to recover. The payment is usually made to the clerk of the court, and is equivalent to a confession of the plaintiff's claim to the amount paid in and a tender of such amount. When made at the time of, or prior to, the plea, no rule or order is necessary, although it would be proper to preserve evidence of the fact, but when, after plea, the defendant desires to pay money into court, a motion should probably be made for leave. The payment may be made upon all the counts in the plaintiff's declaration or upon only a part of them."

The method of paying money into court as stated by text writers on Michigan practice is substantially in harmony with the old common law practice as laid down by early English and American authors upon that subject. *Vide* 1 Burrill's Practice (2d Ed.), 407, and 1 Tidd's Practice (4th Am. Ed.), p. 621, which dealt with the more technical refinements of earlier

practice in the court of the King's bench and common pleas.  Of the then practice in such proceeding it is said in part:

"The motion for leave to bring the money into court is a motion of course and should regularly be made before plea pleaded  *  *  *  the money should be paid to the signer of the writs who acts in this instance as deputy to the master and will give a receipt for the money.  *  *  *  The rule for bringing in the money is drawn up, in this court, by the clerk of the rules in term time, or within a week after, on the motion paper and receipt being left with him as instructions."

Accepting Abbott's Practice as authority, no rule or order was necessary, as the deposit was made with the clerk prior to the plea, but conceding that it is yet in accordance with good practice, a relaxation of former more strict requirements is indicated in Rule No. 11 of Circuit Court Rules of 1897 (in force when this deposit was made) which provides:

"(a) Every rule to which a party would, according to the practice of the court, be entitled of course, without showing special cause, shall be denominated a common rule;  *  *  *  All common rules and all rules by consent of parties shall be entered with the clerk at his office, in a book to be provided by him for that purpose to be called 'common-rule book.'

"(b) Except as required by statute, such rules may be filed with the clerk with the like effect as if entered as above provided."

In so far as the filing or entry of a common rule would furnish any useful information to the clerk or his office, that purpose was served by the statement, or voucher, accompanying the so-called "voucher check," which he accepted and cashed, stating the title and nature of the suit to which the payment applied, the amount and purpose of the payment, with the amounts intended to be applied on each assessment to recover which the action was brought.  Under such

circumstances failure to file a formal common rule, which would ordinarily furnish less information, was but a technical irregularity in practice, affording no adequate ground for evading liability under the plain conditions of defendant's contract of surety that Krakowski should "faithfully perform the duties of his said office," and on demand account for not only money and other property coming into his custody as such officer, but all moneys "paid into said office," to him, acting as such officer and fully advised of its purpose, and was received by him ostensibly in his official capacity by virtue of his office.

The judgment is affirmed.

BIRD, C. J., and MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.

The late Justice OSTRANDER took no part in this decision.